# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

JAMES HINES, individually and on )
behalf of all others similarly situated, *et* )
*al.*, )
           )
        Plaintiffs, )      CASE NO. 3:17-CV-388-MGG
           )
        v. )
           )
ROBERT CARTER, JR. in his official )
capacity and individual capacity, )
           )
        Defendant. )

## OPINION AND ORDER

Plaintiffs' claims in this case arise as the result of the Telephone Privileges Policy

("the Telephone Policy") of the Indiana Department of Correction ("IDOC") enforced at

the Westville Correctional Facility ("WCF" or "Westville") where Plaintiffs were

incarcerated. In applying the Policy, WCF effectively bars offenders from receiving non-

fee telephone calls from privately retained counsel even though offenders with

appointed or *pro bono* counsel may receive such non-fee attorney-client phone calls.

Both Plaintiffs[1], James Hines and Anthony Gant, claim that the Telephone Policy, as

---

[1] Plaintiffs' amended complaint includes allegations suggestive of a class action. However, the Court, at its Rule 16(b) preliminary pretrial conference, stayed any determination of class certification until Plaintiffs filed a formal motion for class certification to which Defendant could response. [DE 19 at 1]. As of this date, Plaintiffs have filed no motion for class certification. Therefore, the Court will only consider whether summary judgment is proper as to Plaintiffs Hines and Gant with no analysis of any claims of a putative class.

implemented at WCF violated their constitutional rights by discriminating on the basis of disability or economic status in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and by denying access to the courts in violation of the Due Process Clause of the Fourteenth Amendment. Plaintiffs also allege that the Telephone Policy discriminates based upon disability in violation of Title II of the American with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 794a.

After completing discovery, Defendant and IDOC Commissioner, Robert Carter, Jr., filed his motion for summary judgment on April 6, 2018. Defendant's motion became ripe on May 14, 2018, after Plaintiffs filed their response and Defendant filed his reply. The undersigned now issues the following opinion and order with jurisdiction conferred by the consent of the parties and 28 U.S.C. § 636(c).

I.  RELEVANT BACKGROUND

The following facts are primarily not in dispute. Where the facts are in dispute, this Court has determined that the disputes are either not material or has chosen to address such disputes in the Court's substantive analysis of the issues.

From July 2016 until July 2017, both Hines and Gant were incarcerated at the Westville Correctional Facility. During that time, both Plaintiffs were represented by private counsel who assisted them in litigating separate civil rights lawsuits resulting from their experiences in prison. In his underlying lawsuit[2], Hines claims that he was

---

[2] *Hines v. State*, 46C01-1601-PL-000149 (LaPorte Co. Circuit Ct.).

discriminatorily "denied placement in IDOC's work release program because he has learning disabilities and is not able to read and write at the sixth-grade level" in violation of Title II of the ADA and Section 504 of the Rehabilitation Act. [DE 42 at 6]. Through his underlying lawsuit[3], Gant claims that "while unarmed and not resisting[, he] was shot by a police officer in violation of the Fourth Amendment to the U.S. Constitution." [DE 42 at 6].

Plaintiffs assert that while they were litigating their underlying cases, the IDOC Telephone Policy, including WCF's bar on receipt of telephone calls from private counsel, interfered with and burdened their ability to consult with their retained counsel. To address this concern, Hines filed a grievance with the prison asking to receive calls from his private attorney at no cost because of his indigence and learning disabilities, which allegedly affected his ability to write. [DE 4 at 14–17]. The prison responded to Hines's grievance—and related appeals—by explaining and affirming the Telephone Policy. [DE 4 at 17]. Specifically, the prison explained that the Policy (1) prohibits offenders from receiving phone calls except those from public defenders; (2) allows offenders to pay for calls to private counsel or to call them collect; (3) allows offenders to avoid having calls with their private counsel monitored by informing prison staff when making calls to counsel; (4) allows offenders to communicate with counsel via mail and attorney visits; and (5) facilitates notice to the offender if private counsel informs the facility that a call from the offender client is needed. [DE 4 at 17].

---

[3] *Gant v. City of Fort Wayne,* et al., Case No. 1:16-cv-380-TLS (N.D. Ind.), No. 18-1287 (7th Cir.).

The prison explicitly denied Hines's request to allow phone calls to his private counsel without charge. [*Id.*].

The IDOC Telephone Policy requires correctional facilities, including WCF, to operate an "offender calling system" that offenders can use to make outgoing telephone calls. [DE 36-2 at 1–2]. While offenders at WCF are generally permitted to access the offender calling system freely during the day, offenders' access to the system may be restricted by Westville's operational and security needs, such as during a lockdown, or as a result of a disciplinary action against an individual offender. [DE 36-1 at 2, ¶ 6; *see also* DE 36-2 at 3–4]. However, offenders are only permitted to use the offender calling system to place calls to people listed on their Offender Telephone List [DE 36-3]. [DE 36-2 at 2]. All calls, except those to a "legal representative" or an "emergency telephone call" as defined in the Policy, "may also be monitored to ensure the safety and security of individuals or the facility." [DE 36-2 at 5]. Yet, offenders are "provided the opportunity to make calls to legal representatives without offender calling system monitoring." [DE 36-2 at 6]. To call his private counsel, therefore, an offender must include the counsel's name on his Telephone List following the procedures set up by the facility and must then inform the staff that the listed person is his attorney to deactivate any monitoring. [DE 36-1 at 2–3, ¶ 11].

Calls through the offender calling system, however, are not free of charge. As allowed under the Policy, WCF operates its offender calling system under contract with a telephone company, Global Tel Link ("GTL"). [DE 36-1 at 2, ¶ 9; *see also* DE 36-2 at 3]. Offenders pay for calls by using a calling card, which draws funds from trust accounts

used by offenders for incidental expenses while in prison, or by making a collect call. [DE 36-1 at 2, ¶ 9]. Either way, the calls are charged at a standard rate of $0.248/minute, plus applicable taxes. [DE 36-1 at 2, ¶ 9]. In certain circumstances, WCF can approve direct dial calls made by designated WCF staff for offenders, not the offenders themselves, without the charges associated with the offender calling system. [DE 36-1 at 3, ¶ 12; DE 36-2 at 7]. As an example of such circumstances, the Policy references a situation where a "legal representatives [sic] telephone system cuts-off the offender's call when it is transferred." [DE 36-2 at 7].

In applying the Telephone Policy, WCF does not permit offenders to receive telephone calls with one sole exception. [DE 36-1 at 3, ¶ 14]. Offenders may only receive telephone calls, as facilitated by the facility staff, from court-appointed counsel. [DE 36-1 at 4, ¶ 17]. Neither the offender nor his court-appointed counsel are subject to the charges associated with the offender calling system for these calls. [DE 36-1 at 4, ¶ 18]. WCF does not facilitate such non-fee calls from any private counsel retained by an offender. [DE 36-1 at 4, ¶ 18].

WCF's application of the Telephone Policy also reflects IDOC's Offender Access to the Courts policy ("the OAC policy"), which sets forth guidelines for offender access to legal representation and the courts. [DE 36-4 at 1]. The OAC policy expressly directs facilities to make provisions "for [offenders'] access to phone calls to legal representatives." [DE 36-4 at 2]. The OAC policy also requires facilities to allow offenders to receive visits, unrestricted in length and number, from their legal representatives during regular business hours and to afford offenders unrestricted

5

access to legal representatives and the courts through the mail. [DE 36-4 at 2]. All offenders also have access to free stationery and envelopes for legal correspondence while facilities must mail legal correspondence without charge for indigent offenders. [DE 36-4 at 2]. In sum, IDOC's OAC policy prohibits facilities from "impos[ing] restrictions on visitation, correspondence, or telephone communications with legal representatives that would obstruct the availability of adequate legal representation, except as necessary due to security and manageability of the facility." [DE 36-4 at 4].

Although Gant was also concerned about the effect of his inability to receive calls at no cost from his retained counsel during the litigation of his Fourth Amendment claim, Gant filed no grievance because of the results of Hines's grievance efforts. Gant assumed that his experience with the grievance process would conclude as it did for Hines, without his having gained access to incoming or non-fee attorney calls. Rather than pursue the grievance process, Gant joined Hines in initiating this lawsuit on April 5, 2017, seeking compensatory and injunctive relief for violations of the ADA, Rehabilitation Act, and the Fourteenth Amendment. Hines was subsequently released from IDOC's custody on June 13, 2017. Gant remains incarcerated.

Defendant now seeks summary judgment on all of Plaintiff's claims arguing that (1) the policies governing offender telephone usage at WCF do not violate the Fourteenth Amendment's guarantees of Equal Protection and Due Process; (2) Plaintiffs are not entitled to special telephone privileges under the ADA or Rehabilitation Act; (3) Defendant is entitled to qualified immunity on Plaintiffs' claims because there is no clearly established right to receive telephone calls in prison; (4) Defendant is entitled to

summary judgment on all of Gant's claims because he failed to exhaust all his administrative remedies before initiating this lawsuit; and (5) Hines's claims for injunctive relief are moot as the result of his release from prison.

As a preliminary matter, the Court notes that through their response brief, Plaintiffs voluntarily dismissed "all individual capacity claims [against Defendant] and proceed on official capacity claims only." [DE 42 at 8]. Qualified immunity does not apply to claims against individuals in their official capacities. *Rivas v. Martin*, 781 F. Supp. 2d 775, 781 (N.D. Ind. 2011) (citing *Armstrong v. Squadrito*, 152 F.3d 564, 582 (7th Cir. 1998)); *see also Owen v. City of Independence*, 445 U.S. 622, 657 (1980). Therefore, Defendant's qualified immunity argument is moot and need not be considered further.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* To determine whether a genuine issue of material fact exists, the court must review the record, construing all

facts in the light most favorable to the nonmoving party and drawing all reasonable

inferences in that party's favor. *Heft v. Moore,* 351 F.3d 278, 282 (7th Cir. 2003).

To overcome a motion for summary judgment, the nonmoving party cannot rest

on the mere allegations or denials contained in its pleadings. Rather, the nonmoving

party must present sufficient evidence to show the existence of each element of its case

on which it will bear the burden at trial. *Celotex,* 477 U.S. at 322–23; *Robin v. Espo Eng'g

Corp.,* 200 F.3d 1081, 1088 (7th Cir. 2000). Where a factual record taken as a whole could

not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue

for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S.

574, 587 (1986). In other words, "[s]ummary judgment is not a dress rehearsal or

practice run; it is the put up or shut up moment in a lawsuit, when a party must show

what evidence it has that would convince a trier of fact to accept its version of the

events." *Hammel v. Eau Galle Cheese Factory,* 407 F.3d 852, 859 (7th Cir. 2005) (quotations

omitted); *see also Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010).

## B.    Constitutional Claims

Defendant argues initially that Plaintiffs' constitutional claims were improperly

brought directly under the U.S. Constitution rather than under 42 U.S.C. § 1983 as

required. [DE 35 at 17 (citing *Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 925

(9th Cir. 2001))]. Indeed, Plaintiffs did not directly invoke Section 1983 in raising their

Fourteenth Amendment claims in their amended complaint. However, in responding to

Defendant's instant motion for summary judgment, Plaintiffs acknowledged the Section

1983 requirement and indicated that they were indeed raising their constitutional claims

under Section 1983. [DE 42 at 13]. Moreover, Plaintiffs' amended complaint alleges that Mr. Hines and Mr. Gant are "represented by counsel in the immediate action and in . . . separate 42 U.S.C. § 1983 suit[s] . . . currently pending" in other courts. [DE 20 at 8, ¶¶ 21, 22]. From this statement, the Court infers that the instant action is raised pursuant to Section 1983 like the underlying cases Plaintiffs have brought. Therefore, Defendant's argument is misplaced and the Court turns to the merits of Plaintiffs' constitutional claims.

In their amended complaint, Plaintiffs allege both an equal protection claim and a due process claim under the Fourteenth Amendment. Plaintiffs' equal protection claim alleges that they were treated differently than other similarly situated non-disabled offenders. Specifically, Plaintiffs claim that despite their learning disabilities and difficulty communicating in writing, they were not allowed to receive non-fee telephone calls from their private counsel while other non-disabled offenders who were represented by appointed counsel or who faced extenuating circumstances were under the Policy. Plaintiffs' due process claim alleges that the Telephone Policy, specifically the bar on receiving telephone calls from private counsel, unreasonably burdened their access to the courts.

### 1.    Equal Protection under the Fourteenth Amendment

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. *Plyler v. Doe,* 457 U.S. 202, 216 (1982). In other words, "[t]he Equal Protection

Clause grants to all Americans the right to be free from invidious discrimination in statutory classifications and other governmental activity." *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996) (internal quotations and citations omitted). "Where disparate treatment is not based on a suspect class and does not affect a fundamental right, prison administrators may treat inmates differently as long as the unequal treatment is rationally related to a legitimate penological interest." *Flynn v. Thatcher*, 819 F.3d 990, 991 (7th Cir. 2016) (citing *Cleburne, Tex. v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439–42 (1985)). "Prison classifications are presumed to be rational and will be upheld if any justification for them can be conceived." *Id.* (citing *Ind. Petroleum Marketers & Convenience Store Ass'n v. Cook*, 808 F.3d 318, 322 (7th Cir. 2015)). Legitimate penological interests include "crime deterrence, rehabilitation, and institutional security" and "prison officials may adopt and execute prophylactic policies to maintain institutional order and security. *Israel v. Cohn*, 6 F. App'x 348, 350 (7th Cir. 2001) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989); *Whitley v. Albers*, 475 U.S. 312, 322 (1986)).

Here, Plaintiffs allege that Defendant discriminated against them through the implementation of the Telephone Policy, which deprived them of "the right to reasonably receive telephone communication from private counsel." [DE 40 at 11, ¶ 40]. As clarified in their briefing of the instant motion, Plaintiffs also contend that Defendant's discrimination deprived them of access to the "program" outlined in the Telephone Policy of allowing prisoners non-fee attorney-client telephone communication under appropriate circumstances when necessary to support their access to courts. [DE 42 at 20]. Plaintiffs accuse Defendant of "choosing to apply [the

exception to the prohibition on receiving calls] in a manner that excludes any use by certain disabled offenders who need access to the service." [DE 42 at 20]. Plaintiffs then argue that Defendant has not provided any rational basis for denying disabled prisoners who have difficulty participating in their own lawsuits primarily through mail while allowing non-disabled prisoners with appointed counsel unlimited, non-fee telephone communications with their attorney.

"To prove an equal-protection claim, [a plaintiff] must show that the program had a discriminatory effect and that the defendants were motivated by a discriminatory purpose." *Alston v. City of Madison*, 853 F.3d 901, 906 (7th Cir. 2017), *cert. denied sub nom. Alston v. City of Madison, Wis.*, 138 S. Ct. 1571 (2018), *reh'g denied,* 138 S. Ct. 2714 (2018) (internal quotations and citations omitted). To prove discriminatory effect, Plaintiffs must show that they are members of a protected class and that they were treated differently from a similarly situated member of an unprotected class. *See id.* Persuasive evidence of discriminatory effect includes statistical analysis or identification of a particular similarly situated member of the unprotected class who was treated differently. *Id.* "Discriminatory purpose means more than simple knowledge that a particular outcome is the likely consequence of an action; rather, discriminatory purpose requires a defendant to have selected a particular course of action at least in part because of its adverse effects upon an identifiable group." *Id.* at 907 (internal quotations and citations omitted).

Defendant argues that the Policy does not discriminate on the basis of disability or economic status and has no discriminatory purpose. Defendant further argues that

even if the Policy was found to be discriminatory, it does not violate the Equal Protection Clause because it is rationally related to legitimate penological interests in institutional order and security.

Defendant's arguments are compelling. Review of the applicable written policies shows that they are facially neutral. Nothing in the policies suggests that disabled or indigent offenders are to be treated differently than any other offenders. Furthermore, Defendant has provided testimony in the form of a sworn declaration from Betty Deutscher, Westville's GTL Coordinator with experience and knowledge related to the Telephone Policy, showing that Policy is implemented without regard to any offender's disability or ability to pay. [*See* DE 36-1]. Plaintiffs clearly disagree and allege that the Policy is actually implemented discriminatorily. Yet Plaintiffs provide absolutely no evidence in support of their allegation.

Ms. Deutscher also testified that the purpose for refusing to allow offenders to receive telephone calls is that "verifying the identity of incoming callers is not practicable, and unmonitored calls may be used to further illicit or illegal activity" and that facilitating incoming calls would strain Westville's resources. [DE 36-1 at 3, ¶¶ 15–16]. Plaintiffs have provided no evidence to refute Ms. Deutscher's testimony. As such, the Court can only conclude that the Policy is used to ensure institutional security and order while also deterring further crime. *See Israel*, 5 F. App'x at 350.

Even if there is a genuine dispute of material fact as to whether there was a reason rationally related to a legitimate government purpose for the alleged discrimination based on disability, Plaintiffs cannot succeed on an their equal protection

claim because they have failed to produce evidence of either Defendant's discriminatory intent or disparate treatment. Therefore, any such dispute is not material to the outcome of Plaintiffs' Equal Protection claim and Defendant is entitled to judgment as a matter of law on this claim.[4]

### 2. Due Process under the Fourteenth Amendment

Plaintiffs argue that the Telephone Policy, as enforced at WCF, unreasonably burdens prisoners' access to courts. Indeed, "[p]risoners have constitutional rights of access to the courts" requiring prisons to "permit lawyers . . . access to the prisoner." *Ivey v. Harney*, 47 F.3d 181, 186 (7th Cir. 1995); *see generally Bounds v. Smith*, 430 U.S. 817, 821 (1977) *overruled in part on other grounds by Lewis v. Casey*, 518 U.S. 343, 354 (1996) ("It is now established beyond doubt that prisoners have a constitutional right of access to the courts."); *Shango v. Jurich*, 965 F.2d 289, 291 (7th Cir. 1992) ("Even persons who have been lawfully deprived of certain rights and imprisoned are not deprived of all rights;

---

[4] More difficult to reconcile, however, is the WCF's distinction between offenders with court-appointed or *pro bono* counsel and offenders with retained counsel in the implementation of IDOC's Telephone Policy. The Court need not resolve this interesting constitutional question because Plaintiffs have only alleged that Defendant intentionally discriminated against them based on their disability and economic status. They have not directly alleged that Defendant violated their Equal Protection rights by intentionally discriminating against them because they retained their own counsel.

Nevertheless, the Court is perplexed by Defendant's explanation for WCF's distinction between offenders based on who pays for their legal representation. According to Ms. Deutscher, Westville favors court appointed counsel "because of their unique role in the justice system," who "[u]nlike private attorneys . . . act as agents of the state." [DE 36-1 at 4, ¶ 18]. With nothing more, the Court can only wonder what conflicts of interest might exist if indeed an offender's attorney is an agent of the state. In reliance on Ms. Deutscher, Defendant also suggests that "Westville . . . views incoming calls from court appointed counsel to pose a lower security risk than calls coming from a private business." [DE 36-1 at 4, ¶ 18]. In so doing, Defendant argues that private counsel poses a greater security risk than appointed or *pro bono* counsel despite the fact that all attorneys—regardless of how they are paid or even if they are paid—are held to the same ethical standards and owe the same duty of loyalty and candor as officers of the court. Thus, the Court is hard pressed to understand the rationale for Defendant's distinction between court-appointed and retained counsel in implementing the IDOC Telephone Policy.

among the remaining rights is access to the courts."). A prison's denial of legal resources that unreasonably hinders an offender's pursuit of a claim violates the Fourteenth Amendment. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Therefore, "unreasonable restrictions on a detainee's access to a telephone may . . . violate the Fourteenth Amendment" despite the reality that prisoner enjoy no rights to an attorney in non-criminal matters. *Murphy v. Waller*, 51 F.3d 714, 718 n.7 (7th Cir. 1995).

"To prove a violation of this right [of access to the courts], a plaintiff must demonstrate that state action hindered his or her efforts to pursue a nonfrivolous legal claim and that consequently the plaintiff suffered some actual concrete injury." *May v. Sheahan*, 226 F.3d 876, 883 (7th Cir. 2000). "Prison officials bear an affirmative duty to provide inmates with this reasonable access to courts and counsel and also bear the burden of proving the adequacy of the means they provide." *DeMallory v. Cullen*, 855 F.2d 442, 446 (7th Cir. 1988). Plaintiff argue that Defendant has failed to show that he met his affirmative obligation to facilitate access to the courts for WCF prisoners through the telephone policy that assesses fees for all prisoner telephone communication with private attorneys, even where non-fee alternatives are reasonably available.

Plaintiffs direct the Court's attention to several cases where courts have found relatively light or brief burdens on a prisoner's telephone communication with his attorney violated his or her due process rights under the Fourteenth Amendment. [DE 42 at 10] (citing *e.g.*, *Tucker v. Randall*, 948 F.2d 388, 390 (7th Cir. 1991) (four-day delay of telephone communication with attorney); *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1051

(8th Cir. 1989) (one inmate call to attorney per week); *Feeley v. Sampson*, 570 F.2d 365, 373–74 (1st Cir. 1978) (one ten-minute call daily); *McClendon v. City of Albuquerque*, 272 F. Supp. 2d 1250, 1258 (D.N.M. 2003) (five-minute attorney-client prisoner phone calls)]. Notably, however, WCF's enforcement of the IDOC Policy did not even match the light or brief restrictions Plaintiffs have referenced.

Admittedly, WCF prohibited all offenders from receiving telephone calls from anyone, including privately retained counsel, or making non-fee calls under the auspices of the Policy. However, WCF did not restrict when or how long offenders could call their attorneys using the Offender Calling System at all. Offenders just had to abide with the System's rules, which are not onerous and simply require offenders to put their attorneys on an Offender Telephone List, to tell WCF personnel that their legal representative is on the other end of a call, and ask that the call not be monitored. Even if offenders cannot make calls to their attorneys themselves using the Offender Calling System for some reason, they still have the option of calling their attorneys collect, receiving personal visits from their attorney at the Facility, and engaging in written correspondence with their attorneys. Plaintiffs put forth no evidence to suggest that they were denied access to any of these communications methods.

Instead, Plaintiffs argue that the methods of communication allowed by WCF were not actually available to them. First, Plaintiffs contend that their learning disabilities prevented them from communicating effectively in writing. Second, Plaintiffs explain that their indigence forced them to choose between paying for phone calls to their attorneys using the Offender Calling System or purchasing important

personal hygiene items. And third, Plaintiffs note that their counsel are located about 100 miles from WCF making visits difficult. Yet these communications challenges do not prevent Plaintiffs from communicating with their attorneys. If Plaintiffs choose not to spend their money on phone calls through the Offender Calling System, they can still exchange written correspondence with their attorneys at no cost. [*See* DE 36-4 at 2]. If their learning disabilities make writing less than effective, Plaintiffs' counsel can visit them. And WCF has not restricted Plaintiffs ability to call their attorneys collect. These inconveniences are merely that—inconveniences arising as some of the ordinary incidents of prison life. *See Israel*, 6 F. App'x at 351.

Most importantly, Plaintiff has put forth no evidence that WCF's prohibition on receipt of calls from their retained counsel actually hindered their ability to pursue their underlying lawsuits. *See May*, 226 F.3d at 883; *see also Shango*, 965 F.2d at 292 ("to survive a motion for summary judgment, the plaintiff must allege some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." (internal quotations and emphasis omitted)). In fact, Plaintiffs report that they have experienced meaningful success in their underlying lawsuits. Hines indicates that he defeated the defendant's motion for summary judgment on his claims and that his case was set for trial in July 2018.[5] [DE 42 at 6]. Similarly, Gant defeated a motion for summary

---

[5] On July 12, 2018, the LaPorte Circuit Court continued Hines's trial until November 2018 because he was unable to obtain a key witness in time for the July trial date. *See* mycase.IN.gov, https://public.courts.in.gov/mycase/#/vw/CaseSummary/eyJ2Ijp7IkNhc2VUb2tlbiI6Ik9XUXhNREl3T0RFMk1UQXhhPalE0TkRRFek5ESXlZVFE5In19 (last visited Oct. 15, 2018).

judgment on his excessive force claim, a matter now before the Seventh Circuit on appeal. [DE 42 at 6].

With nothing more in the record, Plaintiffs' due process claim is misplaced. Defendant has indeed facilitated Plaintiffs'—and all WCF offenders'—access to the courts by allowing them to use a variety of communication methods to contact their privately retained counsel for assistance in prosecuting their lawsuits. Moreover, Plaintiffs' failure to produce any evidence of particular instances where WCF prevented them from communicating with their attorneys or to connect such instances to any negative outcome in their underlying lawsuits dooms their due process claim. Therefore, with no genuine dispute of material fact, Defendant is also entitled to judgment as a matter of law on Plaintiffs' due process claim.

### C.    ADA and Rehabilitation Act Claims

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, program, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability [shall be] "excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance" by reason of his disability. 29 U.S.C. § 794(a)–(b). Neither party disputes that WCF is a public entity that it receives Federal financial assistance or that the statutes apply to disabled state prisoners at WCF.

"To establish a violation of Title II of the ADA, '[a] plaintiff must prove that he is 'qualified individual with a disability,' that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was 'by reason of' his disability." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (quoting *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996)). Similarly, Rehabilitation Act claims require proof that the plaintiff "(1) . . . is a qualified person (2) with a disability and (3) the [state agency] denied him access to a program or activity because of his disability." *Id.* (quoting *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012)).

Here, Plaintiffs contend that they have presented evidence that Defendant may be liable under both the ADA and Rehabilitation Act for failure to provide disabled WCF prisoners access to the non-fee attorney-client telephone services provided to non-disabled prisoners. Plaintiffs' claim is based upon the assumption that prisoners with disabilities like theirs, which limit their ability to communicate with their retained attorneys through written correspondence, should be accommodated with non-fee attorney-client phone calls to preserve their constitutional right of access to the courts. As shown below, however, Plaintiffs have failed to provide evidence of the basic elements of ADA and Rehabilitation Act claims.

### 1. Qualified Disabled Individuals

Plaintiffs have not cited any evidence showing their either of them qualify as disabled individuals. Under the ADA, a qualified individual is an "individual with a disability, who, with or without reasonable modification to rules . . . meets the essential

eligibility requirements for the . . . participation in program or activities provided by a public entity." *Brumfield v. City of Chicago*, 735 F.3d 619, 625 (7th Cir. 2013) (citing 42 U.S.C § 12131(2)). An "otherwise qualified" individual under the Rehabilitation Act is someone who would have qualified for a program to which he was denied were not for his alleged disabilities. *Grzan v. Charter Hosp. of Nw. Ind.*, 104 F.3d 116, 120–21 (7th Cir. 1997); *see also* 29 U.S.C. § 705(2) (defining "Individual with a disability").

In the operative amended complaint, Plaintiffs allege that Hines is a qualified individual under the ADA and Rehabilitation Act because he "suffers from intellectual and learning disabilities and has mental impairments substantially limiting major life activities including learning, reading, concentrating, and thinking." [DE 20 at 2, ¶ 4(c)]. Similarly, Gant alleges that he "suffers from mental impairments and disabilities including post-traumatic stress disorder substantially limiting major life activities including concentrating, thinking, and reading." [DE 20 at 2, ¶ 4(c)]. Yet neither provide any evidence along with their briefing of the instant motion for summary judgment to document their allegations. *See Celotex*, 477 U.S. at 322–23.

In support of their allegation that they are qualified disabled individuals, Plaintiffs merely present their own responses to Defendant's interrogatories without any supporting medical or other documentation. Those responses, viewed most favorably, amount to nothing more than a restated version of the allegations in the amended complaint. In his Interrogatory Number 8, Defendant asked Plaintiffs to identify their alleged disabilities in terms of medical diagnoses, courses of treatment for those disabilities, and medical professionals involved in diagnosing and treating the

disabilities. In response, Hines named his apparent disabilities as ADHD and various mental cognitive deficits, noted that he self-medicates because he cannot afford medications, and identified by name, address, and phone number a substance abuse counselor or case manager. [DE 36-9 at 2]. Answering the same interrogatory, Gant did not specify any disabilities but rather directed Defendant to IDOC, who he claims would have his records. [DE 36-11 at 2].

Yet the IDOC records presented to the Court suggest that Gant has no disabilities. Specifically, Gant's Disability Classification forms dated March 27, 2014 [DE 36-13 at 1], October 27, 2014 [DE 36-13 at 3], and September 5, 2016 [DE 36-13 at 6] report that he has no disability and "is capable of performing activities of daily living." Additionally, Gant's Medical Status Classification form dated September 5, 2016, is marked to describe him as "[f]ree of illness or injury; free of physical impairment; individuals with short term self-limiting condition requiring minimal surgical, medical, nursing or dental intervention limited to 30 days duration." [DE 36-13 at 4]. On a Mental Status Classification form two days later, the provider indicated that he is "[f]ree of mental illness." [DE 36-13 at 7]. The record before the Court includes no similar evidence for Hines leaving the Court to rely solely upon Hines's allegations in the amended complaint and his unsupported interrogatory responses. [6]

---

[6] Attached to Plaintiffs' original complaint were Hines's grievance and appeals in which he stated that he is indigent has "a learning disability for writing letters" and that he was assisted in preparation of his grievance documents [DE 4 at 14–16]. No party attached these documents to their briefing of the instant motion for summary judgment. Therefore, the Court acknowledges that Defendant may have been aware that Hines claimed to be disabled, but need not consider this evidence because it was not designated in connection with the motion for summary judgment now before it.

Even if Plaintiffs' allegations and interrogatory responses were sufficient evidence to document their disabilities, Plaintiffs have not provided evidence that they would have qualified for receipt of non-fee attorney-client telephone calls under the Policy. The Policy only allows for receipt of non-fee phone calls between offenders and their appointed or *pro bono* counsel, not retained counsel. Additionally, Plaintiffs have not presented any evidence to show that they would have qualified for such phone calls from their retained counsel if they did not suffer from disabilities limiting their ability to concentrate, think, read, or write.

Therefore, Plaintiffs have not "put up" sufficient evidence to convince a trier of fact that they even qualify as disabled individuals entitled to the protections of the ADA and Rehabilitation Act. *See Hammel*, 407 F.3d at 859 *see also Brumfield*, 735 F.3d at 625; *Grzan*, 104 F.3d at 120–21.

### 2. Reasonable Accommodation

Under Title II of the ADA, public entities are required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability . . . ." 28 C.F.R. § 35130(b)(7)(1). Similarly, the Rehabilitation Act requires that an "otherwise qualified handicapped individual . . . be provided with meaningful access to the benefit that the grantee offers." *Alexander v. Choate*, 469 U.S. 287, 301 (1985). Accordingly, some affirmative steps can be necessary to accommodate disabled persons. *Juvelis by Juvelis v. Snider*, 68 F.3d 648, 653 (3d Cir. 1995). However, to receive protection under Title II of the ADA or the Rehabilitation Act, disabled plaintiffs "must show that [their] disability is what causes

[their] deprivation of the services or benefits desired." *Wisc. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 752 (7th Cir. 2006).

Here, Plaintiffs argue that the Telephone Policy prohibiting receipt of non-fee offender telephone calls to their retained counsel does not guarantee meaningful access—presumably to counsel and therefore the courts—for disabled prisoners who "struggle to communicate in writing because of lower levels of functioning or those impaired in communication from the trauma underlying their disabilities." [DE 42 at 18]. Yet Plaintiffs have provided no evidence to show that they were deprived of receiving non-fee attorney-client telephone calls because of their alleged disabilities. In fact, the record is replete with evidence showing that the Policy dictates who can receive non-fee attorney-client phone calls based solely on how the attorney is or is not paid for representing the offender.

Even if disability had been a factor in determining which offenders can receive non-fee attorney-client phone calls, Plaintiffs have also failed to provide evidence that Defendant failed to provide a reasonable accommodation for Plaintiffs' alleged disabilities. Nothing in the record suggests that Plaintiffs had documented their disabilities and any necessary accommodations for those disabilities to Defendant. As discussed above, the record now before the Court only includes IDOC records reporting that Gant is not disabled and includes almost nothing about IDOC's knowledge of Hines's disabilities. While Defendant may have been aware that Plaintiffs believed they were disabled either through the Gant forms or the Hines grievances, nothing has been presented to the Court to support any determination that granting Plaintiffs an

exception to the Telephone Policy's prohibition on receipt of non-fee phone calls with retained counsel was the most reasonable accommodation for the alleged disabilities.

Indeed, the Policy provided for alternative methods of communication between offenders and their retained counsel that did not require Plaintiffs to spend money or rely upon written communication—collect phone calls or visits from their attorneys at WCF. Moreover, other accommodations for Plaintiffs' challenges with written communication that were more narrowly tailored to their disabilities than receipt of non-fee telephone calls from their attorneys could have been considered if Plaintiffs had established to Defendant that they were actually disabled. For instance, it seems reasonable that offenders with communications disabilities like Plaintiffs' may have benefitted from the help of prison staff or even volunteer inmates in preparing or reviewing written communications. Furthermore, any inconvenience Plaintiffs' counsel may have faced to visit their clients more 100 miles from their office is not a disability that must be accommodated under the ADA or the Rehabilitation Act.

Therefore, Plaintiffs have failed to provide evidence to establish that they are qualified individuals with disabilities under the ADA or the Rehabilitation Act. Moreover, Plaintiffs have not proffered evidence regarding Defendant's reasonable accommodation of their disabilities. Without evidence that the Policy's alternative methods of communication with retained counsel could not reasonably accommodate Plaintiffs' particular disabilities, Plaintiffs have shown any genuine dispute of material fact that warrants consideration by a trier of fact. Accordingly, Defendant is entitled to judgment as a matter of law on Plaintiffs' ADA and Rehabilitation Act claims.

### D.  Mooted Issues

Having determined that none of Plaintiffs' substantive claims can survive summary judgment for the reasons discussed above, Defendant's affirmative defense that Gant failed to exhaust his administrative remedies before filing this lawsuit is moot. Defendant's request for summary judgment on Hines's claims for injunctive relief based on his release from prison is also moot because none of Hines's claims can survive summary judgment.

## III.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's motion for summary judgment. [DE 34]. The Court **DIRECTS** the Clerk to enter judgment in favor of Defendant on all of Plaintiffs' claims.

**SO ORDERED.**

Dated this 18th day of October 2018.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge
